UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff(s),        CASE NUMBER: 04-80562
                                    HONORABLE VICTORIA A. ROBERTS

v.

**D-1 FABIANO CANEVA,**
**D-2 FABIANO CESILLA, a/k/a "Little Fabiano,"**
**D-5 NELSON A. DOMINGUES,**

        Defendant(s).
_____/

## ORDER

The sentencing hearing for Defendants Fabiano Caneva, Fabiano Cesilla and Nelson A. Domingues began on February 13, 2006 and continued on March 8, 2006. During the March 8th hearing, Defendants each asserted that the Court can and should consider the fact that they will likely be deported as a ground to impose lower sentences. The Court adjourned the hearing and directed the parties to brief the issue. The parties have done so.

For the reasons stated below, the Court finds that none of the Defendants persuasively established that the Court should take their deportation status into account.

**I.    APPLICABLE LAW**

Pre-*Booker*,[1] the Sentencing Guidelines limited the type of factors a district court

---

[1] *United States v Booker,* 125 S.Ct. 738 (2005).

1

could consider in fashioning an appropriate sentence and mandated the extent to which a factor had to be present to warrant departure. *See United States v Crouse,* 145 F.3d 786, 789-790 (6th Cir. 1998). *Booker*, however, rendered the Guidelines advisory, requiring only that courts consider the applicable guideline range and the statutory concerns set forth in 18 U.S.C. §3553(a) and impose a sentence that takes into account the purposes set forth therein. *Booker,* 125 S.Ct. at 757. It is now within the district court's discretion to decide what issues to consider and the weight they should be given, subject to review only for reasonableness. *Id* at 765; *United States v Webb*, 403 F.3d 373, 383 (6th Cir. 2005). But, sentences properly calculated under the Guidelines are presumptively reasonable. *United States v Williams*, 436 F.3d 706, 708 (6th Cir. 2006).

Therefore, Defendants are correct that the Court is not bound by pre-*Booker* limitations on whether (and to what extent) to factor Defendants' deportation status into their sentences. However, there is no authority that prohibits the Court from looking to pre-*Booker* authority for guidance.

The Sixth Circuit has held that there may be circumstances where downward departure based on a defendant's deportable alien status is appropriate. In *United States v Ebolum*, 72 F.3d 35, 38 (6th Cir. 1995), the defendant was an illegal alien. He pled guilty to illegally entering and being found in the United States, in violation of 8 U.S.C. §1326. At sentencing, he requested downward departure because, as a deportable alien, he was not eligible for certain prison programs. Therefore, he asserted that his sentence was more harsh compared to other inmates who were eligible for the programs. The district court declined to grant downward departure. The

Sixth Circuit affirmed.

The *Ebolum* Court noted that the crime committed by the defendant could only be committed by aliens whose conduct necessarily makes them deportable. Therefore, the Court reasoned that the Sentencing Commission must have taken the status of defendants such as Ebolum into account in formulating the guideline that applied to his offense. Consequently, the Court held that downward departure is not permissible "from a sentence imposed under a guideline that applies primarily to aliens who are deportable." 72 F.3d at 38. The Court declined, however, to find that deportable alien status can never be a basis for downward departure in sentencing for other types of crimes.

In *United States v Arefin,* 225 F.3d 660 (6th Cir. 2000)(unpub. op.), the defendant requested downward departure on the same grounds asserted in *Ebolum*. Like *Ebolum*, the district court rejected the request and the Sixth Circuit affirmed (finding that it was a proper exercise of the district court's discretion). In its analysis, the *Arefin* Court acknowledged that the Sixth Circuit has not clearly articulated its position on whether downward departure based on a defendant's alien status is permissible. However, considering *Ebolum* and precedent in other circuits, the Court assumed for purposes of the appeal that such departures are allowed.

It does not appear that the Sixth Circuit has had occasion to consider a request for downward departure under the circumstances asserted by Defendants--a claimed entitlement to favorable consideration because they are willing to waive objection to deportation. A number of other circuits, however, have squarely addressed the issue and hold that such consideration is only appropriate when a defendant has a "colorable,

nonfrivolous defense to deportation." *See United States v Clase-Espinal*, 115 F.3d 1054, 1059 (1st Cir. 1997); *United States v Galvez-Falconi*, 174 F.3d 255, 260 (2nd Cir. 1999); *United States v Marin-Casteneda,* 134 F.3d 551, 555-556 (3rd Cir. 1998); *United States v Ramirez-Marquez*, 372 F.3d 935, 938 (8th Cir. 2004); *United States v Mignott,* 184 F.3d 1288, 1291 (11th Cir. 1999). The Eighth Circuit also adds requirement that the waiver substantially assist the administration of justice*, Ramirez-Marquez*, 372 F.3d at 938*,* and the Third Circuit requires that the United States Attorney request a departure. *Marin-Castenada*, 134 F.3d at 555.

Several courts reason that, absent a colorable defense to deportation, an offer of waiver is an empty gesture that does not take the defendant outside the heartland of cases involving a deportable alien. *See Clase-Espinal*, 115 F.3d at 1058 ("[A]n alien criminal defendant with no plausible basis for contesting deportation . . . does not meet the atypicality requirement for a section [U.S.S.G. §] 5K2.0 departure simply by relying upon whatever administrative convenience presumably may result from a stipulated deportation.); *Galvez-Falconi*, 174 F.3d at 260 (Absent a colorable defense, "the act of consenting to deportation, alone, would not constitute 'a circumstance that distinguishes a case as sufficiently atypical to warrant' a downward departure."); *Ramirez-Marquez*, 372 F.3d at 939 ("[I]f a defendant attempts to waive deportation rights, but really does not forfeit any rights or assist the administration of justice, we do not consider the defendant's 'waiver' as being atypical from any other criminal case involving an alien facing deportation."); *Mignott*, 184 F.3d at 1291 ("[A] defendant's consent to a deportation against which he has no apparent defense would be a meaningless concession that fails to remove him from the heartland of other alien criminal

defendants facing deportation.").

Defendant Caneva points out that, in *United States v Toro*, 133 Fed. Appx. 181 (6th Cir. 2005), an unpublished opinion, the Sixth Circuit did not discuss whether or not defendant had a colorable defense in its assessment of the sentence imposed by the district court, which included a two-level downward departure because defendant agreed not to contest deportation. However, Caneva's reliance on *Toro* is misplaced.

Other than the fact that the departure was agreed upon in a plea agreement, no information was given regarding whether the *Toro* defendant had a colorable defense to deportation, and the departure was not at issue on appeal. Rather, defendant asserted that, in light of *Booker* which was decided after defendant was sentenced, the district court engaged in inappropriate judicial fact finding in order to increase his base offense level. It was on this basis that defendant's sentence was vacated and remanded by the *Toro* court. *Toro* is not persuasive authority.

## II.    ANALYSIS

### A.    Deportation Status

Although not bound to follow pre-*Booker* precedent, the Court finds that the analysis adopted by multiple circuits is a reasonable means of assessing requests for a lesser sentence based upon a defendant's offer not to contest immediate deportation at the conclusion of the sentence. It seems that each Defendant is suggesting that the Court grant time served in anticipation that their waiver of their defenses will result in immediate deportation. However, none of the Defendants established that they have a colorable, nonfrivolous defense to deportation. Therefore, their offer of a waiver is an

insignificant concession.

Cesilla concedes that he does not have a colorable defense. (He only asserts that he would have had a colorable defense if he completed the process to get a green card.). Domingues and Caneva cite their family ties and long-term residency in the United States[2] as possible defenses that they could assert to appeal to the Administrative Law Judge's equitable discretion. Caneva additionally argues that possible changes in immigration law may deem his (and his co-Defendant's) actions legal. The Government disputes that Caneva and Domingues have a colorable defense, and further points out that Caneva and Cesilla are illegal aliens who have no legal right to be in this country anyway.

With regard to Domingues and Caneva's family ties, at least one district court rejected such circumstances as a colorable defense. In *Rosario-Dominguez v United States*, 353 F.Supp. 2d 500, 517 (S.D.N.Y. 2005), the court declined to take into account the fact that defendant was a legal resident and that he had a wife and children whom he claimed would suffer a hardship without his support. The Court stated:

> The fact that [Defendant] has family in the United States cannot serve as a colorable defense to deportation, as such a claim would provide practically every prisoner awaiting deportation with grounds for seeking a departure. Then downward departures would, inappropriately, become the rule rather than the exception.

353 F.Supp.2d at 517 (quotation marks and citations omitted).

The same reasoning applies here. Additionally, Defendants do not cite any case law or statute which *requires* an Administrative Law Judge to take their family ties and

---

[2] Caneva has been in the United States for eleven years. Domingues has been in the United States for 18 years.

6

longevity in the United States into account; nor is there any evidence that such consideration is likely. Therefore, the Court declines to find that these factors constitute colorable defenses.

There is also no merit to Caneva's assertion that uncertainty about changes in immigration law should weigh in his favor. Caneva says that "given the state of the political debate on illegal immigrants in this country as well as various pending legislation concerning illegal immigration in this country, it clearly can be argued that Mr. Caneva has a non-frivolous defense of deportation." Caneva br. at p. 3. He further says that "with a stroke of a pen and/or certain pending or talked-about litigation, the crime for which Mr. Caneva has been convicted (giving illegal aliens access to driver's licenses) may be a purely legal activity." *Id* at p. 4.

While there is significant public debate on whether immigration laws should be modified, changes in immigration law are far from a certainty either in scope or content. There is no basis for this Court to presume that any changes made will be favorable to Caneva. Therefore, the unstable political climate relative to immigration is not a colorable defense.

In short, deportation is likely for each of the Defendants regardless of whether they contest. Therefore, the fact that they will be deported or will waive their seemingly frivolous defenses does not warrant special consideration by the Court.

**B.     18 U.S.C. §3553(a)**

Only Defendant Caneva directly responded to the Court's inquiry about which factor of §3553(a) is impacted by their deportation status. Cesilla, however, argues that he has other characteristics which should be considered under §3553(a). Both

Defendants assert their arguments under §3553(a)(2) which states:

> (a) Factors to be considered in imposing a sentence.--The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider--
>
> * * *
>
> (2) the need for the sentence imposed--
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner

Under §3553(a)(2)(a), Cesilla argues that the Court should consider: 1) that he has been incarcerated under very unfavorable circumstances (in the county jail), particularly when compared to co-Defendant Hugo de Souza Faria (held at Milan); 2) that he contracted tuberculosis while incarcerated; 3) that the government repeatedly rejected his offers to cooperate in its investigation; 4) his employment history; and 5) his strong family ties and responsibility towards his mother.

However, Cesilla does not provide any information regarding his current medical condition, employment history, family ties or responsibility towards his mother. Additionally, he does not offer any persuasive reason why the Court should take into account his seemingly unremarkable detention (he only alludes to sexual harassment) and the government's exercise of its discretion not to accept his offer of cooperation.

8

Caneva argues that §3553(a)(2)(a) through (d) would be furthered by taking his expected deportation into account.  Arguing for time-served, he asserts that the 22 months he has served and his likely deportation serves each of the concerns listed in subsections (a) through (c).  Caneva further asserts that the objectives of subsection (d) would not be served unless he is immediately deported, because he *believes* that he will not be given educational or vocational training while incarcerated since he is a deportable alien.  However, in his native Brazil, he says that he can get on with his life.

Caneva further requests that the Court consider the following: 1) equalization of punishment (relative to Faria); 2) his positive criminal history; 3) his strong family ties and work history; 4) serious rashes and other (unspecified) ailments he experienced while incarcerated; 5) the fact that he has been housed in the county jail, which he contends is more difficult than federal incarceration; 6) certainty of deportation and/or deportation itself; and 7) his crime (providing driver's licenses to illegal aliens as opposed to smuggling aliens into the country).

Again, like Cesilla, Caneva does not provide any information suggesting that special consideration should be given because of his criminal history, family ties, work history, and the offense for which he was convicted.  Caneva also provides no information about his current medical condition.  Nor has he persuasively established that any past medical conditions he suffered while in jail should be taken into account in fashioning his sentence.  Even if county jail time is more difficult than federal, there is no apparent reason for the Court to consider that at this juncture.  Any additional time served would be in the federal system.  And, the fact of his deportation will not be considered for the reasons already stated.

9

Defendant is correct that a district court can downward depart to reconcile a defendant's sentence with a co-defendant. *U.S. v Reed*, 264 F.3d 640, 649 (6th Cir. 2001). However, such a departure is only warranted when the defendants are similarly situated. For instance, it is not reasonable to depart downward for a defendant who did not cooperate with authorities to bring it in conformity with a defendant who did:

> Presumably, authorizing a district court to depart from the guidelines for defendants who cooperate with authorities was Congress' way of giving defendants an incentive to cooperate. Rewarding one who has not cooperated with authorities to essentially the same degree as those who have cooperated strains the incentives inherent in reward and punishment.

*U.S. v Nelson,* 918 F.2d 1268, 1275 (6th Cir. 1990); *See also Reed,* 264 F.3d at 649. As Caneva did not provide any information regarding how his situation compares with that of Faria, it is unclear that downward departure on this basis is warranted.

**C.    Miscellaneous**

One final argument asserted by Caneva is unrelated to the issues the Court asked that he brief. (The Government argues that the argument should be stricken as outside the scope of the Court's request.). He reasserts his objection to the Court utilizing his co-Defendants' plea transcripts against him as a means of fact-finding on a contested variable. (He does not indicate what contested variable he is referencing.) He cites *United States v Emuegbunam,* 268 F.3d 377 (6th Cir. 2001), for the proposition that a court may only admit hearsay statements of co-conspirators when the government establishes by a preponderance of evidence that: 1) a conspiracy existed; 2) the defendant was a member of the conspiracy; and 3) the co-conspirators' statements were made in furtherance of the conspiracy.

Presuming that Caneva is asserting this argument with regard to the Court's resolution of a fact relevant to sentencing, *Emuegbunam* does not apply. The standard set forth in *Emuegbunam* pertains to the admissibility of co-conspirator's hearsay statements, under FRE 801(d)(2)(E), at trial. At sentencing, the Court may consider any information that is relevant and has sufficient indicia of reliability without regard to its admissibility under the rules of evidence. *See* U.S.S.G. §6A1.3(a); *United States v Silverman*, 976 F.2d 1502, 1513 (6th Cir. 1992). The Sixth Circuit expressly held that a court may consider testimonial evidence from a co-conspirator to determine the drug quantity attributable to another conspirator. *See United States v Swanberg*, 370 F.3d 622, 625 (6th Cir. 2004); *United States v Hernandez*, 227 F.3d 686, 697 (6th Cir. 2000); *United States v Keating*, 35 F.3d 567, *6 (6th Cir. 1994)(unpub. op.). Therefore, there is no merit to Caneva's hearsay objection to the Court's reliance on his co-conspirator's statements against him.

### III.    CONCLUSION

Defendants' request that the Court take their deportation status into account in deciding the appropriate sentence is **DENIED**.

**IT IS SO ORDERED.**

                                           S/Victoria A. Roberts
                                           Victoria A. Roberts
                                           United States District Judge

Dated: May 1, 2006

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on May 1, 2006.

S/Carol A. Pinegar
Deputy Clerk